**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT OWENSBORO**

RANDALL LEE BABB, SR.                                                    **PLAINTIFF**

v.                                                    **CIVIL ACTION NO. 4:16-CV-P29-JHM**

DAVID OSBOURNE *et al.*                                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This is a civil rights action brought by a convicted prisoner pursuant to 42 U.S.C. § 1983.

The Court has granted Plaintiff leave to proceed *in forma pauperis*. This matter is before the

Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601

(6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 594 U.S. 199 (2007), and five

motions for leave to file an amended/supplemental complaint. For the reasons set forth below,

the Court will grant Plaintiff's motions for leave to file an amended/supplemental complaint, and

the action will be allowed to continue in part and be dismissed in part.

### I. PROCEDURAL HISTORY

On March 4, 2016, Plaintiff filed the complaint in this action. On March 11, 2016,

Plaintiff filed another complaint which was opened as a new action. *Babb v. Daviess County*

*Detention Center*, 4:16-cv-00040-JHM. However, upon further review of this complaint, the

Court determined that it should be consolidated into this action (DN 26). Thus, the Court

construes that complaint (DN 27) as the first motion for leave to file an amended/supplemental

complaint in this action. Plaintiff then filed another complaint in this action on April 8, 2016

(DN 12). The Court construes this complaint as Plaintiff's second motion for leave to file an

amended/supplemental complaint. On May 10, 2016, Plaintiff filed a "continuence of claims"

which this Court construes as Plaintiff's third motion for leave to file an amended/supplemental

complaint (DN 28).  On May 27, 2016, Plaintiff filed another complaint which the Court

construes as Plaintiff's fourth motion for leave to file an amended/supplemental complaint

(DN 18).  Finally, on May 31, 2016, Plaintiff filed a document titled "Continuance of Claims,"

which the Court construes as Plaintiff's fifth motion for leave to file an amended/supplemental

complaint (DN 19).[1]  The Court will grant Plaintiff's five motions for leave to file an amended/

supplemental complaint and consider the allegations set forth in each of these documents in this

initial review.

## II. SUMMARY OF COMPLAINTS

Plaintiff was incarcerated at Daviess County Detention Center (DCDC) for several

months.  Plaintiff first writes concerning an event that occurred at DCDC on January 5, 2016.

Plaintiff alleges that on this date he woke up between 3:15 and 3:45 a.m. and "went to pee and

get water from the sink."  He alleges that he noticed that the area was a little messier than normal

and that the trash can was missing.  He said he asked some other inmates where the trash can was

and they told him it had been taken.  He says these inmates then told him: "You better get on

your back B-4 you get shot by a stray bullet."  Plaintiff continues:

> As I started picking up thinking what was said was loose wrap (bull shit) like
> 95% of the time, I noticed everyone (most) stuff was packed and when my
> neighbor said Babb this is no shit there coming in on us Pack your stuff so I
> gathered some of my stuff.  They come running in in riot gear hollering down on
> your stomach hands behind your head etc as they asscorted us all out first 4 at a
> time then by 2 we all went to isolation, segregation unit B-Pod without nothing
> but what we were wearing + placed in 2 man cells and door locked for close to 2
> days.  Had no write ups of any kind 4 days.  Had no showers, no hygiene, no
> blankets, matts, no court call, etc. + when they gave us blankets a few hours later
> on Thursday the 7th they bum rushed us again using excessive force holler are we
> suicidal most of us said no 22 I believe.  The officers proceed as though we said
> yes violation of policy + lying on us as well.  They wer so ruff with me they tore

---

[1] On June 17, 2016, Plaintiff filed a "Notice/Continuation of Claims" (DN 21).  This filing simply contains various state policies and procedures which the Court will use in its analysis of Plaintiff's claims to the extent they are relevant.

off my wrist band and enjuryed my back throwing me to the ground + everything else out in the foiler (outside the door) except me + my bunky Mr. Evans.

Plaintiff states that when these events were over, he asked an officer to bring him a Bible and a civil rights complaint. He states that he believes these actions show that the officers involved were either "not properly trained or don't have the temperament for this type of job." He continues: "The officers involved over reacted to no more than disruptive behavior + non violate demonstration for those involved + the non-protestants that were not involved were degraded and victimized."

In his first amended complaint (DN 27), Plaintiff clarifies that the DCDC officers involved in the first alleged excessive force incident were "Lt. Major Elshy, Lt. Jack Jones, Sgt. Moore, Sgt. Teasley, Sgt. Wyatt, Officer Dewitt, Roberts." He alleges that it was these officers who "came rushing in gear pointing lazer gun + screaming get on the floor, hands behind your back (see video) taking everyone to segregation . . . ." Plaintiff then clarifies that during the second alleged incident of excessive force, the inmates were again "bum rushed . . . in riot gear." Plaintiff writes that on this occasion, it was "Elshy and Jack Jones [who] physically put their hands on me tearing my raist band + enjurying my back + taking any + everything in our cells + placing us on suicide watch."

Plaintiff alleges that he was placed in segregation without "due process, write ups, court call, etc." Plaintiff states that he got out of segregation on January 13, 2016.

Plaintiff further alleges that being "placed in a 20 man cell with more than 30-36 inmates" where he had to sleep on the floor violated his civil rights.

Plaintiff alleges that he was denied medical attention from Advanced Corrections Healthcare (ACH) staff and Defendant Johnston for over 10 days.

Plaintiff also alleges that he was malnourished at DCDC. He states: "Breakfast, bologna, 2 pieces thin, four pieces bread, small serving corn chips + small cookies may 1000 calories if that. Breakfast + supper is bologna and lunch is cold children's pizza with 4 cookies." He continues:

> Plaintiff claims to receive 3 children size meals (not adult + certainly not 2800 calories a day per D.O.C. Rules and Regulation. Plaintiff states he stayed so hungry do to the in addiquit portions that he was constantly out of focus . . . When I did receive my meds they would upset my stomach due to multitude of pills. Plaintiff states that he was losing weight daily. Plaintiff also seems to indicate that while he was in segregation, he received "1/2 rashins, less than 1000 calories + 2 cold meals and one hot.

Plaintiff further alleges that he was in areas of the jail where black mold was in the vents and that he has suffered "shortness in breath, difficulties breathing, coughing, etc. to this day."

Plaintiff also claims that he requested several documents from DCDC and that he was told that he would "have to have 4-6 dollars on my account to receive requested documents" even though he is indigent and the inmate handbook states that "indigent inmates are allowed one copy of each and all requested documents."

Plaintiff also states that he had no access to the legal library at DCDC.

In Plaintiff's second amended/supplemental complaint (DN 12), Plaintiff states that he was deemed totally disabled by the Social Security Administration for several mental illnesses in May 1998. He then alleges that on December 5, 2015, he:

> filled out a medical request in reference to my psy meds and/or being placed on replacement medications for the prescriptions Dr. Johnston and/or Advanced Corrections Healthcare discontinued, placing me in undo stress, manic withdraws, life threatening seizures, extreme emotional distress due to being on adderal, klonpins + loritabs + neurotins for over 15-20 years.

Plaintiff further alleges that between December 2, 2015, and March 2, 2016, he sent sick calls, medical request forms, and grievances concerning his anxiety, panic attacks, seizures,

severe mood swings "only to be either ignored or be placed on replacement meds that for the most part made matter worst and caused my stay at [DCDC] extremely difficult and at times unbearable." Plaintiff states that he tried to "explain to Dr. Johnston that [he] had a history of mental illnesses and how badly [he] dispretly needed [his] meds. He would not give me my meds that was prescribed by my River Valley doctors for over 10 years." Plaintiff states that he told Dr. Johnston that he was found totally disabled by the Social Security Administration for "bi-polar disorder Type 2 manic," panic disorder, and personality disorder.

Plaintiff continues that on several occasions "my meds were either wrong at times and at times never received them!" He states that he specifically filed a grievance regarding this issue on January 27, 2016, and that he got a document back stating that "it was noted."

Plaintiff also states that he and his cellmates never got their "morning meds" until 11 a.m. or noon. He also states that he wrote several requests "to get his meds increased due to being on the lowest dose made." Plaintiff says that "Dr. Johnston and his staff told me that I was the most manic inmate he had met at the jail."

Plaintiff also alleges that he witnessed med-techs and/or medical staff "throwing away some of my sick-calls, medical request forms and/or grievances on numerous occasions."

Plaintiff also states that "Psy Nurse Natatly" came to his cell and spoke to him about his mental health issues in front of other inmates.

In Plaintiff's third amended/supplemental complaint (DN 28), he alleges that he was placed in a "cell" with an inmate he had a conflict with for 5½ hours. Plaintiff alleges that this action placed his life in danger.

Plaintiff also alleges that Defendant Jones and Defendant Elshy allow inmates with "hip c to work in the kitchen thus exposing every inmate to that disease and showing disregard to the well-being of everyone whom eat the food at DCDC."

Plaintiff also states that he was threatened or verbally told he would be going to isolation every time he filed grievances or complaints.

Plaintiff further alleges that DCDC Jailer Osbourne routinely has "8-10 . . . over the limit in every cell and in segregation and or isolation. 6 by 9 cells that has 4-5 inmates in a one man cell.  You have to step over people to go to the phone, shower, etc. + it takes money to buy a bunk usually bottom bunks cost $40 in the canteen and top bunks 10 dollars."

Plaintiff recites some of these same allegations in his fourth and fifth amended/ supplemental complaints.

Plaintiff names as Defendants in this action, DCDC and DCDC officials Lt./Major Elshy, Lt. Jack Jones, Sgt. Moore, and Sgt. Wyatt in their official capacities only.  Plaintiff sues Jailer David Osbourne, Chief Deputy Ken Elschide, Marty Teasley, Deputy Dewitt, and Deputy Roberts in both their official and individual capacities.

Plaintiff also names as Defendants "Doctor/Nurse Practitioner Johnston" in his official and individual capacities, Nurse Brad Brown in his individual and official capacities, "Psy Nurse Natatly" in her official capacity, Nurse Ledding in an unspecified capacity, and "the nurses and med-techs" in their official capacities.

 Based upon the allegations set forth in these complaints, Plaintiff states that he is bringing claims for "excessive force, civil rights, violation of policy, negligence + incompetence, and due process violations . . . unfit living conditions, hostile environment, sleeping on the floor

20-36 men in a cell . . . and food not proportional."  Plaintiff seeks monetary and punitive damages and injunctive relief.

### III. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A.  Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  A court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.*; *see also Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990).  "Examples of the latter class are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar."  *Id.* at 328; *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (indicating that an action has no arguable factual basis when the allegations are delusional or "rise to the level of the irrational or the wholly incredible").  The Court need not accept as true factual allegations that are "'fantastic or delusional'" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).  In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc.* v. *Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## IV. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

The Court first notes that although Plaintiff names DCDC as a Defendant, the detention center is not an entity subject to suit. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The claims against the detention center are against Daviess County as the real party in interest. *Id.* ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint."). *See also Blay v. Daviess Cty. Det. Ctr.*, No. 4:07CV-P69M, 2007 U.S. Dist. LEXIS 71131, at *1 (W.D. Ky. Sept. 25, 2007); *Fambrough v. Vaught*, No. 4:06CV-P130-M, 2007 U.S. Dist. LEXIS 20679, at *1 (W.D. Ky. Mar. 21, 2007) ("[T]he claims against the detention center are also against [the County] as the real party in interest."); *Smallwood v. Jefferson Cty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (suit against fiscal court is actually suit against county itself). Accordingly, DCDC will be dismissed from this action.

In addition, to the extent that Plaintiff sues Defendants in their official capacities, "[o]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Because all Defendants are employees or officers of Daviess County or ACH, the claims brought against them in their official capacities are deemed claims against one of these entities. *See, e.g.*, *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county); *Griffin v. S. Health Partners, Inc.*, No. 1:12CV-P174-M, 2013 U.S. Dist. LEXIS 17770,

at \*13-14 (W.D. Ky. Feb. 11, 2013). For purposes of initial review, the Court will presume that ACH is a state actor. *See, e.g.*, *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) ("It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'") (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)). Thus, the Court will dismiss Plaintiff's official-capacity claims against individual Defendants as duplicative. *See, e.g.*, *C.K. v. Bell Cty. Bd. of Educ.*, 839 F. Supp. 2d 881, 884 (E.D. Ky. 2012) ("A plaintiff may sue a local government directly for damages . . . so there is no longer a need to bring official-capacity actions against local government officials.")

When a § 1983 claim is made against a municipality or a private corporation like ACH, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality or private corporation is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The entity is only liable when an official policy or custom of the corporation causes the alleged deprivation of federal rights. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). Put another way, neither municipalities nor private corporations like ACH can be held liable under § 1983 for torts committed by its employees when such liability is predicated solely upon a theory of *respondeat superior*. *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999).

With regard to individual-capacity claims, a plaintiff bringing an individual-capacity claim under § 1983 "seek[s] to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21 (1991). To sufficiently plead a

§ 1983 claim against a Defendant in his/her individual capacity, a plaintiff must allege that Defendant's "personal involvement" because "§ 1983 liability cannot be imposed under a theory of *respondeat superior*." *Miller v. Calhoun Cty.*, 408 F. 3d. 803, 817 n.3 (6th Cir. 2005). Thus, to hold a supervisor liable under § 1983, a plaintiff "must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . . ." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).

### A. Eighth Amendment Claims

#### 1. Excessive Force

In his complaint, Plaintiff alleges that one night while he was up going to the bathroom and getting water, DCDC officers came running into his area of the jail wearing "riot gear," pointing "lazer guns"[2] at the inmates, and yelling for the inmates to get down on their stomachs with their hands behind their heads. He alleges that the officers then escorted the inmates into segregation for two days. Plaintiff alleges that "on the third day," DCDC officers "bum rushed [the inmates] again . . . in riot gear," yelled that the inmates were suicidal, and again placed them in segregation. Plaintiff alleges that on this second occasion, the officers were so rough with him that they tore his wrist-band and injured his back.

Plaintiff states that the DCDC officers involved in these events were "Lt. Major Elshy, Lt. Jack Jones, Sgt. Moore, Sgt. Teasley, Sgt. Wyatt, Officer, Dewitt, Roberts." He alleges that it was these officers who "came rushing in gear pointing lazer gun + screaming get on the floor, hands behind your back, taking everyone to segregation . . ." Plaintiff alleges that the second time the inmates were "bum rushed . . . in riot gear," it was "Elshy and Jack Jones [who] physically put their hands on me tearing my raist band + enjuring my back + taking any + everything in our cells + placing us on suicide watch."

---

[2] Here, the Court presumes that Plaintiff means taser guns.

Under the Eighth Amendment, an official's conduct will be found to amount to cruel and unusual punishment "when their offending conduct reflects an unnecessary and wanton infliction of pain." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)).  In examining an excessive-force claim under the Eighth Amendment, the constitutional analysis has both a subjective and an objective component, requiring the court to determine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and whether "the pain inflicted [is] sufficiently serious."  *Cordell*, 759 F.3d at 580 (internal quotation marks and citations omitted).  This heightened Eighth Amendment standard acknowledges that "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Id.* (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)) (alteration in original).

### a.  Individual-Capacity Claims

Upon review, the Court will allow Plaintiff's individual-capacity claims against Defendants Marty Teasley, Deputy Dewitt, and Deputy Roberts for the use of excessive force to proceed at this time.  The Court will also allow Plaintiff to amend his complaint to sue Defendants Lt./Major Elshy, Lt. Jack Jones, Sgt. Moore, and Sgt. Wyatt in their individual capacities.  *See LaFountain v. Harry,* 716 F.3d 944 (6th Cir. 2013) (a district court may allow a prisoner to amend a complaint to avoid *sua sponte* dismissal under the Prison Litigation Reform Act).

The individual-capacity claims against Jailer David Osbourne and Chief Deputy Ken Elschide will be dismissed because Plaintiff does not indicate that they were personally involved in the alleged use of excessive force incidents or that they "implicitly authorized, approved, or

knowingly acquiesced" in the offending officers' alleged unconstitutional conduct. *Everson v. Leis*, 556 F.3d at 495 (6th Cir. 2009).

### b. Municipal Liability

Plaintiff alleges that he was subjected to these two alleged incidents of excessive force because the officers involved were either "not properly trained or don't have the temperament for this type of job." He states: "The officers involved over reacted to no more than disruptive behavior + non violate demonstration for those involved + the non-protestants that were not involved were degraded and victimized."

Thus, because Plaintiff has alleged that he was subjected to the use of excessive force based upon Daviess County's failure to adequately train its officers, the Court will allow the claim against Daviess County to proceed at this time.

### 2. Conditions of Confinement

"Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

### a. Overcrowding

Plaintiff alleges that DCDC is routinely overcrowded. He states that DCDC Jailer Osbourne routinely has "8-10 . . . over the limit in every cell and in segregation and or isolation. 6 by 9 cells at has 4-5 inmates in a one man cell. You have to step over people to go to the phone, shower, etc. + it takes money to buy a bunk usually bottom bunks cost $40 in the canteen and top bunks 10 dollars."

"'[E]xtreme deprivations' must be alleged to support a prison overcrowding claim." *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012). "[O]vercrowding is not, in itself, a constitutional violation, and [Plaintiff] has not alleged that the allegedly overcrowded conditions resulted in an unconstitutional denial of such basic needs as food, shelter, or sanitation." *Id.*; *see also Brown v. Plata*, 563 U.S. 493 (2011) (overcrowding violates the Eighth Amendment when it "strains inadequate medical and mental health facilities; overburdens limited clinical and custodial staff; and creates violent, unsanitary, and chaotic conditions that contribute to the constitutional violations"); *Daugherty v. Timmerman-Cooper*, No. 2:10-cv-01069, 2011 U.S. Dist. LEXIS 81939, 2011 WL 3206844, at *3 (S.D. Ohio June 28, 2011) ("[N]umerous courts, including both the Sixth Circuit and this Court, have emphasized that double or triple celling inmates, without more, is insufficient to state a constitutional claim.") (report and recommendation), *adopted*, 2011 U.S. Dist. LEXIS 81936, 2011 WL 3207053 (S.D. Ohio July 27, 2011).

Thus, the Court will dismiss Plaintiff's conditions-of-confinement claim with regard to his allegations of overcrowding because they do not state a constitutional claim.

### b. Exposure to Black Mold and Hepatitis C

However, Plaintiff also alleges that he was exposed to black mold at DCDC and that this has caused him to suffer "shortness in breath, difficulties breathing, coughing, etc. to this day." Plaintiff further alleges that he informed "Deputy Is. Bell" of the "dangers" related to black mold and that "Deputy Is. Bell" told Plaintiff to file a grievance and that, if Plaintiff brought the matter up again, "[Plaintiff] was going to isolation." Plaintiff also seems to indicate that he filed a multitude of medical grievances related to his issues with black mold.

Finally, Plaintiff alleges that Defendant Jones and Defendant Elshy allow inmates with "hip c to work in the kitchen thus exposing every inmate to that disease and showing disregard to the well-being of everyone whom eat the food at DCDC."

Based on the above, the Court will allow Plaintiff's claims against Daviess County regarding exposure to black mold and Hepatitis C to proceed. The Court will also allow Plaintiff to amend his complaint to name "Deputy Is. Bell" as a Defendant in his/her individual capacity. The Court will also grant Plaintiff leave to amend his complaint to name Defendants Jones and Elshy in their individual capacities.

### 3. Malnutrition

The Eighth Amendment requires prison officials to provide inmates with a diet that is nutritionally adequate for the maintenance of normal health. *Clark-Murphy v. Foreback*, 439 F.3d 280, 292 (6th Cir. 2006); *Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977). "Food served to inmates need not be appetizing. The Eighth Amendment merely requires . . . that it be adequate to meet an inmate's essential nutritional needs." *Heinz v. Teschendorf*, No. 05-CV-73470, 2006 U.S. Dist. LEXIS 98030, at *24 (E.D. Mich. Sept. 19, 2006).

Plaintiff alleges that he was malnourished at DCDC. He states: "Breakfast, bologna, 2 pieces thin, four pieces bread, small serving corn chips + small cookies may 1000 calories if that. Breakfast + supper is bologna and lunch is cold children's pizza with 4 cookies." He continues: "Plaintiff claims to receive 3 children size meals . . . Plaintiff states he stayed so hungry do to the in addiquit portions that he was constantly out of focus . . . Plaintiff states that he was losing weight daily." Plaintiff also seems to indicate that while he was in segregation, he received "1/2 rashins, less than 1000 calories + 2 cold meals and one hot."

Plaintiff alleges that Defendants Osbourne, Elschide, Jones, Moore, and Teasley are responsible for not adequately feeding DCDC inmates. The Court will allow Plaintiff's claims against Daviess County and his individual-capacity claims against Defendants Osbourne, Elschide, and Teasley to proceed. As stated above, the Court will allow Plaintiff to amend his complaint to name Defendants Jones and Moore in their individual capacities.

### 4. Deliberate Indifference to Safety

Plaintiff also alleges that he was placed in a cell for 5½ hours with an inmate with whom he had a "conflict." Pursuant to the Eighth Amendment, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *see also Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate safety." *Id.* at 837. Here, Plaintiff indicates that once he informed an official that he had been placed in the cell with this inmate, he was transferred to another cell. Thus, the Court concludes that Plaintiff cannot show that any Defendant knew of and disregarded an excessive risk to his safety and will

dismiss Plaintiff's claim for deliberate indifference to his safety for failure to state a claim upon which relief may be granted.

### 5. Deliberate Indifference to a Serious Medical Need

To satisfy the objective component of an Eighth Amendment deliberate indifference claim, Plaintiff must show the existence of a sufficiently serious medical need. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004)). The subjective component of the Eighth Amendment standard is met "where a plaintiff demonstrates that prison officials acted with 'deliberate indifference' to a serious medical need," which "is the equivalent of 'recklessly disregarding that risk.'" *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 836). In other words, "[s]atisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)).

In *Alspaugh v. McConnell*, the Sixth Circuit held as follows:

> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id*. However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id*.

643 F.3d 162, 169 (6th Cir. 2011).

The Sixth Circuit also has held that "[a] plaintiff alleging deliberate indifference must show more than negligence or misdiagnosis of an ailment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). A plaintiff must also show that his claim involves more than a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment. *Westlake v. Lucas*, 537 F.2d at 860, n.5.

Plaintiff states that he was deemed totally disabled by the Social Security Administration for several mental illnesses in May 1998. Plaintiff's first allegation with regard to his medical care seems to be that he was denied medical attention from ACH staff and Defendant Johnston for over 10 days – which is seemingly the approximate number of days in January which Plaintiff alleges he was wrongfully placed in segregation.

Plaintiff also alleges that between December 2, 2015, and March 2, 2016, he sent sick calls, medical request forms, and grievances concerning his anxiety, panic attacks, seizures, and severe mood swings "only be to be either ignored or be placed on replacement meds that for the most part made matter worst and caused my stay at [DCDC] extremely difficult and at times unbearable." Plaintiff states that he tried to "explain to Dr. Johnston that [he] had a history of mental illnesses and how badly [he] dispretly needed [his] meds. He would not give me my meds that was prescribed by my River Valley doctors for over 10 years." Plaintiff states that he specifically told Dr. Johnston that he had been found totally disabled by the Social Security Administration for "bi-polar disorder Type 2 manic," panic disorder, and personality disorder.

Plaintiff alleges that on December 5, 2015, he:

filled out a medical request in reference to my psy meds and/or being placed on replacement medications for the prescriptions Dr. Johnston and/or Advanced Corrections Healthcare discontinued,  placing me in undo stress, manic withdraws, life threatening seizures, extreme emotional distress due to being on adderal, klonpins + loritabs + neurotins for over 15-20 years.

Plaintiff continues that on several occasions "my meds were either wrong at times and at times never received them!" He states that he specifically filed a grievance regarding this issue on January 27, 2016, and that he got a document back stating that "It was noted."

Plaintiff also states that he and his cellmates never got their "morning meds" until 11 a.m. or noon. He also states that he wrote several requests "to get his meds increased due to being on the lowest dose made." Plaintiff says that "Dr. Johnston and his staff told me that I was the most manic inmate he had met at the jail."

Plaintiff also alleges that he witnessed med-techs and/or medical staff "throwing away some of my sick-calls, medical request forms and/or grievances on numerous occasions."

Based upon these allegations, the Court will allow Plaintiff's individual-capacity claim against Defendant Johnston to proceed. The Court will also allow Plaintiff to amend his denial-of-medical treatment claim to name the medical staff whom he alleges denied him treatment, to sue them in their individual capacities, and to describe the facts surrounding each additional Defendant's involvement in this claim.

Plaintiff's individual-capacity claims against Nurse Brad Brown and Nurse Ledding will be dismissed because Plaintiff has failed to allege how either nurse was personally involved in the alleged deliberate indifference to his serious medical needs. The Court will also dismiss ACH because Plaintiff has failed to allege that his claim of deliberate indifference to a serious medical need was caused by an ACH policy or custom.

### 6. Disclosure of Medical Information

Plaintiff also alleges that "Psy Nurse Natatly" came to his cell and spoke about to him about his mental health issues in front of other inmates. The disclosure of private medical information fails to state an Eighth Amendment claim. *See, e.g.*, *Townsend v. Reaume*, No.

1:130cv729, 2013 U.S. Dist. LEXIS 103917, at *9 (W.D. Mich. July 25, 2013). However, the disclosure of an inmate's medical information may violate the Fourteenth Amendment's right to informational privacy. *Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998). The Sixth Circuit narrowly applies the right to informational privacy "only to interests that implicate a fundamental liberty interest. *Id.* The Sixth Circuit has limited such a violation to only two instances: "(1) where the release of personal information could lead to bodily harm, [citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998)] and (2) where the information released was of a 'sexual, personal, and humiliating nature.'" *Townsend v. Reaume*, No. 1:13-cv-729, 2013 WL 3872173, at *4 (W.D. Mich. July 25, 2013) (quoting *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008); *Bloch v. Ribar*, 156 F.3d at 684). The alleged disclosure of information concerning Plaintiff's mental health issues does not meet either of these circumstances. *See Lee v. City of Columbus*, 636 F.3d 245, 261 (6th Cir. 2011) ("[U]nder our interpretation of privacy rights, we have not yet confronted circumstances involving the disclosure of medical records that, in our view, are tantamount to the breach of a 'fundamental liberty interest' under the Constitution."); *Townsend*, 2013 WL 3872173, at *4 ("[E]ven assuming arguendo that protecting a prisoner's HIV status is a 'fundamental interest,' it does not follow that protection of all medical and/or mental health information rises to the same level."); *cf. Bloch*, 156 F.3d at 687 (holding that the right to informational privacy was triggered by a press conference in which a sheriff released highly personal and extremely humiliating details of the plaintiff's rape). Further, Plaintiff himself has mentioned his mental health diagnoses repeatedly in his filings in this case. Thus, finding no constitutional violation in the alleged disclosure of Plaintiff's mental health issues, the Court will dismiss this claim.

### B. Fourteenth Amendment Due Process Claim

Plaintiff next alleges that his due process rights were violated because he was twice placed in segregation "with no write ups."

To state a Fourteenth Amendment due process claim, an inmate must allege a deprivation of a liberty interest protected by the Due Process Clause. Generally, no liberty interest in remaining free from disciplinary segregation will be found. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Indeed, the Supreme Court has held that it is necessary to provide due process to an inmate in only two instances in which a prisoner may claim a constitutionally protected liberty interest that is protected by due process: (1) when the inmate's terms of imprisonment are altered, and (2) when a prison restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Here, Plaintiff does not allege that the length of his sentence has been altered. Thus, he must demonstrate that he suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" in order to establish that he has been deprived of a liberty interest, which, in turn, would require that he receive due process. *Id.* Plaintiff seems to allege that he was placed in segregation after the two excessive-force incidents for between eight to ten days. Comparing Plaintiff's placement in "segregation" with decisions from other courts, the Court finds that his isolation does not constitute an "atypical and significant hardship" under the *Sandin* analysis. *Id.* at 486 (finding that Sandin's placement in disciplinary confinement for thirty days did not work a major disruption in his environment); *Ford v. Harvey*, 106 F. App'x 397 (6th Cir. 2004) (state prisoner's placement in disciplinary confinement did not implicate a liberty interest entitled to due process protection, where it was neither accompanied by loss of good time credits nor lasted for a significant period of time causing an unusual hardship on

prisoner); *Wilson v. Wellman*, No. 99-2377, 2000 U.S. App. LEXIS 31934 (6th Cir. Dec. 6, 2000) (plaintiff did not suffer the loss of good-time credits or any other action affecting the duration of his sentence; no due process claim because disciplinary segregation did not impose an atypical and significant hardship in relation to the ordinary incidents of prison life). Therefore, Plaintiff's Fourteenth Amendment due process claim will be dismissed.

### C. First Amendment Claims

#### 1. Denial of Access to a Law Library

In his complaint, Plaintiff also alleges that he has no access to the legal library. However, an inmate who claims his access to the courts was denied *merely* because he was denied access to the prison library, or certain books, fails to state a claim. *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). Rather, the inmate "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In other words, a plaintiff must demonstrate an actual injury. *Id.* He must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Lewis*, 518 U.S. at 356 (advising that no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented"). For this reason, Plaintiff's claim based upon lack of access to the law library will be dismissed.

#### 2. Retaliation

Plaintiff also alleges that he was threatened or verbally told he would be "going to isolation every time he filed grievances or complaints." However, verbal threats made in

retaliation for filing grievances are not actionable under § 1983.  *See, e.g.*, *Carney v. Craven*, 40

F. App'x. 48, 50 (6th Cir. 2002).  The retaliation claim, therefore, will be dismissed.

### D.  Failure to Provide Requested Documents

Plaintiff also alleges that DCDC officials failed to provide him with copies of several

documents that he requested because he did not have the funds in his account to pay for copies.

Plaintiff seems to allege that was a violation of jail policy because he was indigent.  An alleged

failure to comply with a policy does not itself rise to the level of a constitutional violation.

*Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48

(6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*,

No. 94-23347, 1995 U.S. App. LEXIS 9509, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995)

(failure to follow policy directive does not rise to the level of a constitutional violation because

policy directive does not create a protectable liberty interest).  Section 1983 is addressed to

remedying violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922,

924 (1982); *Laney*, 501 F.3d at 580-81.  Plaintiff, therefore, fails to state a claim arising from the

alleged policy violations.

Plaintiff also asks the "Court to file a Open Records request at the Daviess County

Detention Center" for the multitude of documents that he seeks.  However, the Kentucky Open

Records Act, KRS § 61.870 *et seq.*, sets forth the procedure for making an open records request

in Kentucky and provides an appeals process for requests that are denied.  Under KRS

§ 61.880(5)(b), an individual who receives an unsatisfactory response to an open records request

may appeal to the Attorney General.  The individual may then appeal the Attorney General's

decision in the circuit court of the county where the public records are maintained.  KRS

§ 61.882(1).  Thus, to the extent that Plaintiff seeks documents under the Kentucky Open Records Act, he should follow the process set forth in that statute.

For these reasons, the Court finds that Plaintiff has failed to state a claim with regard to DCDC's alleged denial of his requests for copies of various documents.  However, to the extent that Plaintiff seeks these documents to support his claims, he may request them through discovery.  *See* Fed. R. Civ. P. 34 (pertaining to requests for production of documents from a party).

## V. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's five motions for leave to file an amended/ supplemental complaint (DNs 12, 18, 19, 27 & 28) are **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Eighth Amendment claims of overcrowding and deliberate indifference to safety; disclosure of medical information claim; Fourteenth Amendment due process claim; First Amendment claims of denial of access to the law library and retaliation; and his claim based upon DCDC's failure to provide him copies of requested documents are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Advanced Corrections Healthcare, Nurse Brad Brown, Nurse Ledding, and "Nurse Natatly" are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Clerk of Court is **DIRECTED** to terminate Daviess County Detention Center, Advanced Corrections Healthcare, Nurse Brad Brown, Nurse Ledding, and "Nurse Natatly" as parties to this action.

The Clerk of Court is **DIRECTED** to add Daviess County as a party to this action.

**IT IS ORDERED** that the following Eighth Amendment claims shall proceed: Plaintiff's claim against Daviess County and his individual-capacity claims against Defendants Marty Teasley, Deputy Dewitt, and Deputy Roberts for the use of excessive force; Plaintiff's claims against Daviess County for exposure to black mold and Hepatitis C; his claim against Daviess County and his individual-capacity claims against Defendants Osbourne, Elschide, and Teasley for malnutrition; and his individual-capacity claim against Defendant Johnston for deliberate indifference to a serious medical need.

**IT IS FURTHER ORDERED that within 30 days from the entry date of this Order, Plaintiff may file an amended and/or supplemental complaint. Should Plaintiff decide to file an amended/supplemental complaint, he should sue Defendants Lt./Major Elshy, Lt. Jack Jones, Sgt. Moore, and Sgt. Wyatt in their individual capacities. Plaintiff should also add "Deputy Is. Bell" as a Defendant and sue him/her in his/her individual capacity. Additionally, Plaintiff may amend his denial-of-medical-treatment claims to name as Defendants the medical staff/techs who were allegedly involved in those claims, to sue them in their individual capacities, and to describe the facts surrounding how each of these individuals violated his rights.**

The Court will conduct an initial review of Plaintiff's amended/supplemental complaint pursuant to § 1915A. **Should Plaintiff fail to file an amended/supplemental complaint with the above information within the allotted amount of time, Plaintiff's claims against these Defendants will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.**

**Plaintiff should also submit a completed summons form for each newly named Defendant within the same 30-day period.**[3]

The Clerk of Court is DIRECTED to send Plaintiff a § 1983 complaint form with this case number and the word "Amended" affixed thereto so that Plaintiff can include the additional Defendants and allegations set forth above. The **Clerk of Court also is DIRECTED** to send Plaintiff four blank summons forms.

Date: August 17, 2016

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: Plaintiff, *pro se*
4414.011

---

[3] The Court offers the following guidance to Plaintiff in his completion of the summons forms:
(1) prepare a summons for each Defendant sued; (2) write or type Defendant's name and address on the summons in the space provided; (3) write or type Plaintiff's name in the space provided; (4) **do not** fill in any other part of the summons form and **do not** mail the summons to any of the defendants.